(No. 24531

THE ALTON RAILROAD COMPANY, Appellant, *vs.* THE ILLINOIS COMMERCE COMMISSION *ex rel.* Moulding-Brownell Corporation *et al.* Appellees.

*Opinion filed April 20, 1938—Rehearing denied June 15, 1938.*

SILAS H. STRAWN, and FRANK H. TOWNER, for appellant.

OTTO KERNER, Attorney General, COOKE, SULLIVAN & RICKS, and CLARENCE B. CARDY, (HOMER D. DINES, DONOVAN Y. ERICKSON, HARRY R. BOOTH, HOWARD C. KNOTTS, JOHN P. BARNES, JR., and GERSON MARKS, of counsel,) for appellees.

Mr. JUSTICE ORR delivered the opinion of the court:

The Moulding-Brownell Corporation filed a petition with the Illinois Commerce Commission alleging that it was served by a switch-track in the city of Chicago connecting with the Chicago and Alton Railroad and that, although it was the duty of the railroad to maintain this track and to pay certain fees imposed by the city of Chicago, the railroad had refused to do so. Petitioners prayed for an order by the commission requiring the railroad to perform its

obligations. Subsequently, the Alton Railroad Company filed a petition with the commission alleging that it did not own the track in question and was under no duty to maintain it. This petition asked the commission to rule that it might discontinue service over the track unless the Moulding-Brownell Corporation and the other industries served by it undertook its maintenance. The two cases were consolidated and after several hearings the commission, on March 24, 1937, ordered that the railroad maintain the track in question. This order was affirmed by the circuit court of Cook county and the case is here upon direct appeal under section 69 of the Public Utilities act. (Ill. Rev. Stat. 1937, chap. 111⅔, par. 73.) The commission found that the power of the city of Chicago to impose a charge for maintenance of the track upon the city streets was not before it and hence made no order on that point. Thus we are not called upon to pass upon that issue.

The findings of fact made by the commission, which are not disputed by any of the parties, show that the construction of the switch-track involved in this proceeding, and the five spur-tracks leading from it, was begun some time before 1884; that except for 150 feet adjacent to the intersection of the switch-track and the main line of the railroad, the tracks are located upon property owned by the four industries served, and that the original expense of building these tracks was borne by these companies. In 1904 the petitioning railroad entered into an agreement with the four industries located along this track whereby it agreed to assume the maintenance of the main switch-track, shown by the plat to be approximately 4000 feet in length. This agreement was performed by the railroad until March 26, 1936, when its receiver, appointed by a decree of a Federal court, elected not to continue the contract. The spur-tracks leading from the switch-track into the plants have always been maintained by the respective industries and no question as to their maintenance was raised

by the petitions in this case. In 1934, an estimated gross revenue of $40,000 was received by the railroad from the industries served by the switch-track. It appears that the average "running repair" on the track has cost about $1000 per year, although the total outlay will be greater than that sum during the next few years, due to necessary replacements.

The only issue before us is whether a railroad can be compelled by the Illinois Commerce Commission to maintain a switch-track built by and upon the property of the industries served by the track. We have previously held that, as between the public and the railroad company, a switch-track built for industrial purposes and across public thoroughfares becomes a part of the main line of the railroad system which it joins and is subject to governmental regulation in the public interest even though it was built by private funds and for the most part on private property. (*Public Utilities Com.* v. *Smith,* 298 Ill. 151; *St. Louis, Springfield and Peoria Railroad* v. *Commerce Com.* 309 id. 621; *Von Oven* v. *Chicago, Burlington and Quincy Railroad Co.* 317 id. 334.) Petitioning railroad does not dispute the correctness of these decisions but contends that they merely determine its duty as a public utility to the public at large. It argues that the duty of maintenance is an incident of the ownership of the track and that since it was under no duty to build the track in the first place and since it does not now own it, the burden of maintenance cannot be imposed upon it. This argument is incompatible with our repeated holdings that switch-tracks of this type, once built, become a part of the main line of the railroad, whether built upon private rights-of-way or upon public streets. (*Von Oven* v. *Chicago, Burlington and Quincy Railroad Co. supra,* and cases cited.) It overlooks the fact that petitioning railroad uses this track for its own benefit to serve the industries located thereon, and, under the authorities above cited, may use the track, or extensions thereto, con-

veniently to serve other shippers and the public at large. The public, therefore, has an interest in the proper maintenance of this track quite apart from the interest of the parties to this suit. It was said by the Supreme Court of Wisconsin in *Union Lime Co.* v. *Railroad Com.* 144 Wis. 523, 129 N. W. 605, that over such tracks "the products of the industry find their way into the markets of the world and every consumer is directly interested in the lessened cost of such products resulting from the building and operation thereof. That these products are supplied by a single owner, or by a limited number of owners, affects the *extent* and not the nature of its use—the track is none the less a part of the avenue through which the commodities reach the public. * * * Except that it [the railroad] is relieved of the initial cost of right of way and construction, the track stands in the same relation to it that any other portion of its track does. The owner of the industry obtains no interest in or control over it beyond that of being served by it equally with any one else who may desire to use it."

Section 50 of the Public Utilities act provides: "Whenever the commission, after a hearing had upon its own motion, or upon complaint, shall find that additions, extensions, repairs or improvements to, or changes in, the existing plant, equipment, apparatus, facilities or other physical property of any public utility * * * ought reasonably to be made * * * to promote the security or convenience of its employees or the public, or in any other way to secure adequate service or facilities, the commission shall make and serve an order directing that such additions, extensions, repairs, improvements or changes be made, * * * in the manner and within the time specified in said order." This section is broad enough to impose a duty upon a railroad to maintain property which it uses for its own profit as well as that to which it has title, and, under the act, the commission has ample authority to enforce it.

588

The petitioning railroad contends, however, that because other industries in Chicago provide and maintain connecting spur-tracks at their own expense, the order of the commission in this case will result in discrimination. It appears, however, that such connections are similar in nature to the five spur-tracks leading from the switch-track in question here. These connections have been, and apparently will continue to be, maintained by the individual companies to whose premises they lead. Hence no discrimination is apparent.

The order of the Illinois Commerce Commission was within its statutory power and does not violate any provision of the State or Federal constitutions. The judgment of the circuit court of Cook county, sustaining the order of the commission, is affirmed.

*Judgment affirmed.*