## ALTON RAILROAD CO. *v.* ILLINOIS COMMERCE COMMISSION ET AL.

No. 231. Argued December 15, 16, 1938.—Decided January 16, 1939.

*Mr. Frank H. Towner,* with whom *Mr. Silas H. Strawn* was on the brief, for appellant.

*Mr. Harry R. Booth,* Assistant Attorney General of Illinois, with whom *Messrs. John E. Cassidy,* Attorney General, and *Homer D. Dines* were on the brief, for appellees.

MR. JUSTICE BUTLER delivered the opinion of the Court.

The question is whether an order made by the commission, denying appellant's application for authority to discontinue, and requiring it to continue, maintenance and operation of a switch track in Chicago used to serve shippers, deprives it of its property in violation of the due process clause of the Fourteenth Amendment. Specifically, appellant maintains that by compelling it to expend its funds for the upkeep of a track not constructed or owned by it and upon land it does not own, the order is repugnant to that provision of the Constitution. The Illinois supreme court, affirming the circuit court of Cook County, sustained the order as a valid exercise of state power.   368 Ill. 584; 15 N. E. 2d 508.

Appellees, insisting that our decisions rule that question in their favor, filed a motion to dismiss or affirm.*   We

---

*Appellees rest their motion to dismiss or affirm on: *Union Lime Co.* v. *Chicago & N. W. Ry. Co.,* 233 U. S. 211.   *Lake Erie*

postponed consideration of the motion to the argument of the case on the merits. Now after hearing counsel it appears that the question presented by the appeal is not so clearly lacking in merit that upon mere citation of our decisions it may be put aside as not requiring further consideration. We therefore deny the motion. *Milheim* v. *Moffat Tunnel Dist.*, 262 U. S. 710, 716, 717. *Hamilton* v. *Regents,* 293 U. S. 245, 258.

Through purchasers at judicial sale July 18, 1931, appellant acquired the properties of the Chicago & Alton Railroad Company, a consolidated company formed in 1906 and in receivership from 1922 to the sale. It and its predecessors, including the receiver, may for brevity be referred to as the carrier.

The switch track in question extends from the carrier's main line about 150 feet on the right-of-way, thence 2,681 feet, crossing public streets and alleys, to the boundary of the plant of the Peoples Gas Light & Coke Company upon land largely, if not wholly, owned by that company and the other industries served by the track. The industries, commencing with the one nearest the main line, are Commonwealth Edison Company, E. Heldmaier, Inc., Moulding-Brownell Corp., and the gas company. All but the first depend upon the track for rail transportation. It has been extended for some distance into the plant of the gas company. Five spurs, that appropriately may be called private sidings, extend from it and serve within the plants of the industries. There is here no question as to the part of the track within the gas plant or of the spurs serving the industries. Construction was begun prior to 1884, and at least since 1887 the stretch here in question has been used to serve the gas

& W. R. Co. v. *Public Utilities Comm'n,* 249 U. S. 422. *Chicago & N. W. Ry. Co.* v. *Ochs,* 249 U. S. 416. *Western & Atlantic Railroad* v. *Public Service Comm'n,* 267 U. S. 493, 496.

company, and for more than 30 years other industries between that company's plant and the main line. The original cost of construction was borne by the gas company and possibly other industries. It does not appear by whom the cost of maintenance prior to 1904 was paid.

Pursuant to ordinance passed November 2, 1903, a part of the track was elevated at crossings of three streets and two intervening alleys. November 1, 1904, the carrier made an agreement with the gas company and the predecessor of the electric company pursuant to which they paid the cost of elevation. The gas company agreed to pay an annual fee of $300 imposed by the ordinance for the privilege of maintaining the track across the streets and alleys. The carrier agreed to maintain the track. And, by an assignment reciting that the ordinance had been obtained for their benefit, the carrier transferred it to the gas and electric companies. The gas company paid the fees until the 1903 ordinance expired November 2, 1923. Then it and the electric company insisted that future exactions by the city as well as maintenance should be borne by the carrier. The latter refused to accept the additional burden. December 10, 1924, the city passed an ordinance authorizing use of the streets for 20 years from expiration of the 1903 ordinance, increased the annual fee to $1,400, and required a bond to insure compliance. The carrier accepted the terms of the ordinance, having an understanding with the gas and electric companies that they would pay the charges. Nevertheless, it paid $1,400 annually from 1923 to 1932 and was reimbursed only to the extent of $300 paid by the gas company for each of three years in that period. As of November 2, 1932 the annual fee was reduced to $700, and appellant paid it up to November 2, 1936. The carrier bore the cost of maintaining the track from 1904 to March 26, 1936. On that

date, exercising as it asserts a right reserved by final decree in the receiverhip proceeding, it elected not to assume the contract. Nevertheless, it has continued to use and maintain the track. Thus since 1903 the carrier, in addition to maintaining the track, has paid $15,-190 to the city as compensation for its occupancy of the public streets and alleys. Through error as it says, it paid taxes on the track for some of the time.

Needed repairs and betterments of the track involved will require expenditures amounting to about $4,000 a year for three years; then annual cost of maintenance will be about $1,000. It may be assumed that, in order to continue operation, appellant will have to pay whatever fees are charged by the city, and that, because the track is on land not owned by it, its expenditures for additions and betterments must, as it asserts, by accounting regulations be charged to operating expenses. The annual gross revenue for transportation over the track amounts to about $40,000.

Appellant does not suggest that operating expenses including the city charges, plus cost of replacements and betterments, will exceed revenue derived from use of the track or that operation of the track will not yield it a reasonable profit; nor does it claim, as of constitutional right, to be entitled to have any profit from use of the switch track separately considered. *Puget Sound Traction Co.* v. *Reynolds,* 244 U. S. 574, 580. *Fort Smith Light & Traction Co.* v. *Bourland,* 267 U. S. 330, 332. *Western & Atlantic Railroad* v. *Public Service Comm'n,* 267 U. S. 493, 496–497. Admittedly, appellant is willing to continue to use the track to serve the industries. Its petition prays an order requiring them to pay cost of maintenance and future city charges. It seeks authority to discontinue service and to cancel applicable rates, but only in case of failure of the industries to pay these op-

erating expenses. It wants, not to give up the traffic, but to shift a substantial financial burden that it has long been bearing to the industries served.

The state supreme court held: As between the public and the railroad, a switch track built for industrial purposes and across public thoroughfares becomes a part of the main line of the system which it joins and is subject to governmental regulation in the public interest, even though it was built by private funds and for the most part on private property; appellant uses the switch track in question for its own benefit to serve industries located on it and may use it and extensions of it to serve other shippers and the public at large; the public has an interest quite apart from that of the parties to the suit in the maintenance of the track; the state public utility act, § 50, is broad enough to impose upon a railroad duty to maintain the property which it uses for its own benefit as well as that to which it has title; the commission has ample power to enforce that duty and the order does not violate any provision of the state or federal constitutions.

We have held: The uses for which a track was desired are not the less public because the motive which dictated its location was to reach a private industry, or because the proprietors of that industry contributed to the cost. *Hairston* v. *Danville & Western Ry. Co.,* 208 U. S. 598, 608. The State, consistently with the due process clause of the Fourteenth Amendment, may empower a common carrier by railroad to condemn a right-of-way for a spur leading to a single industry to be operated under obligations of public service open to all and devoted to public use. *Union Lime Co.* v. *Chicago & N. W. Ry. Co.,* 233 U. S. 211, 222. It may compel a railroad to extend a siding to an adjacent industry so as to provide additional trackage for public use and, if necessary, to condemn a right-of-way. *Chicago & N. W. Ry. Co.* v. *Ochs,* 249

U. S. 416, 419. For similar exertions of state power, see *Lake Erie & W. R. Co.* v. *Public Utilities Comm'n,* 249 U. S. 422, 424 and *Western & Atlantic Railroad* v. *Public Service Comm'n, supra.*

The decision of the state supreme court in this case must here be held conclusively to establish that under the constitution and laws of Illinois the order is valid. The decisions of this Court above cited leave no doubt as to the power of the State to require a common carrier by railroad to condemn rights-of-way for and to construct switch tracks like the one here involved. So far as concerns decision of this case, it matters not whether Illinois has exerted that power, for the track has been laid and is being used by the carrier. The required mainteance and operation are not beyond the scope of the carrier's undertaking to serve the public. *Union Lime Co.* v. *Chicago & N. W. Ry. Co., supra. Chicago & N. W. Ry. Co.* v. *Ochs, supra.*

Assuming that the questions whether the switch track is open to public use and has become a part of the main line are so related to the constitutional issue here presented that the state court's determination of them is not binding upon this Court, we are of opinion that, upon the facts alleged in appellant's petition to the commission, the latter's unchallenged findings, and our decisions in similar cases, it is clear that in point of fact and law the switch track and any extensions of it that may be made are open to use to serve the public and constitute a part of the carrier's system.

Asserting that the duty to maintain a track such as that in question normally results from ownership, appellant earnestly insists that the order is shown to be unreasonable by the fact that rails and other materials purchased and owned by it when put into the track immediately cease to belong to it and become the property of the gas

company which, appellant says, retains right of ownership in the track. But, in making that and similar arguments, appellant ignores the decisions in this case of the commission, the state supreme court, and as well the ruling of this Court just indicated, to the effect that the track in question is one built for industrial purposes on and across public thoroughfares; a track that has become a part of the main line of the carrier's system and, though constructed without cost to it on lands owned by others, is open to public use; a track which has long been and is being used by the carrier for its own benefit and by it may be used with extensions if any shall be made, to serve the public at large.

Appellant does not suggest that as against the owners of the land or those who paid for building the track, it is a trespasser or without right to continue to maintain and operate the track as required by the order. Nor does it say that, by exertion of the power of eminent domain, it may not successfully resist demands of claimants or owners for possession of any part of the land or of the track not owned by it. See *Mapes* v. *Vandalia Railroad Co.*, 238 Ill. 142, 145; 87 N. E. 393; *Black* v. *Chicago, B. & Q. R. Co.*, 243 Ill. 534, 539; 90 N. E. 1075; *Roberts* v. *Northern Pacific R. Co.*, 158 U. S. 1, 11; *Northern Pacific R. Co.* v. *Smith*, 171 U. S. 260, 271.

If, as suggested, expenditures for needed betterments, as well as those for maintenance, are chargeable to operating expenses, all are returnable to the carrier, out of operating revenue, as a part of the cost of maintenance and use. And, if appellant acquires title to the land and track, then additions and betterments made by it will constitute a part of its investment in road and equipment owned and used for its purposes as a common carrier and, by the due process clauses of the state and federal constitutions, safeguarded against confiscation.

It is clear that enforcement of the order will not take appellant's property in violation of the due process clause of the Fourteenth Amendment.

*Affirmed.*

MR. JUSTICE BLACK is of opinion that the motion to dismiss should be granted.

MR. JUSTICE ROBERTS took no part in the consideration or decision of this case.