BALTIMORE & O. R. CO. et al. v. UNITED STATES et al.

CLEVELAND UNION STOCK YARDS CO. v. UNITED STATES et al.

Civ. Nos. 24435, 24479.

District Court, N. D. Ohio, E. D.

March 11, 1947.

Case No. 24435.

Dwight B. Buss, (B. & O. R. R.) G. H. P. Lacey, A. P. Martin, (P. R. R.) Willis T. Pierson, (Erie R. R.) John A. Duncan, (W. & L. E. Ry.), and Robert R. Pierce, (N. Y. C. R. R.) all of Cleveland, Ohio, and Leo. P. Day, (N. Y. C. R. R.), of Chicago, Ill., for plaintiffs.

Case No. 24479.

M. S. Farmer, of Cleveland, Ohio, for plaintiff.

Don C. Miller, Dist. Atty., of Cleveland, Ohio, for the U. S.

Gordon C. Locke, I.C.C., of Washington, D. C., and John P. Staley and Ross D. Rynder, both of Chicago, Ill., for Swift & Co.

Before ALLEN, Circuit Judge, and JONES and FREED, District Judges.

JONES, District Judge.

These two cases, by stipulation of the parties and order of the Court, were consolidated for hearing and decision since they arise out of the same facts and circumstances, and in each case the same order of the Commission is challenged and sought to be enjoined. The plaintiffs in both cases were parties to the proceedings before the Commission and it was against both of them that the Commission issued its single order now under consideration.

The facts are not in dispute and are fully set forth in the Commission's opinion and in the several briefs of the parties.

For the purpose of decision the facts briefly may be summarized:

The Cleveland Union Stock Yards Company of Ohio has been engaged in the business of operating public stockyards and a public market, on its own lands, in the City of Cleveland since 1893. Since 1921 its stockyards have been posted as a stockyard under the provision of the Packers and Stockyards Act of 1921, 7 U.S.C.A. § 181 et seq. and from then until now it has operated under the jurisdiction of the Secretary of Agriculture. It has no railroad equipment and operates no trains or cars.

In May, 1899, the Stock Yards Company entered into agreement with The New York Central Railroad Company (then the Big Four) to construct track 1619 (1619 feet in length) upon lands of the Stock Yards Company to connect with a 132-foot spur from the Railroad Company's main track. The Railroad laid the track and maintained it at the Stock Yards' expense. The Railroad was given the right to use the track, without cost, for business other than that of the Stock Yards Company, provided such use did not interfere with the business of the Stock Yards Company. The agreement contained a 60-day termination clause. In June, 1924, that agreement was canceled and another private sidetrack agreement was executed by the Stock Yards Company and the Railroad for operation over lands of the Stock Yards Company and over the same track 1619. A 30-day termination clause was inserted in this second agreement.

Although Swift & Company earlier and successfully had negotiated for a spur and sidetrack directly from the Railroad Company's main track to its own siding (plaintiff's exhibit 11, with map and letters attached) this opportunity of securing direct service was abandoned by Swift & Company as too expensive, and Swift & Company continued to be served by the Railroad Company over the Stock Yards Company's private track and the Railroad's own switch track and "wye" beyond; and this with full knowledge on the part of Swift & Company of the Stock Yards' continued as-

sertion of its complete ownership of track 1619 and the contractual reservation for the termination of its use.

In February, 1935, another contract superseded the agreement of June, 1924, prohibiting free use of track 1619 for competitive traffic, construed by the Railroad and Stock Yards to mean live stock shipments, a charge for which was to be the subject of separate agreement. No agreement as to the charge for such shipments being reached between the Railroad Company and the Stock Yards Company, on November 12, 1938, the Railroad's switching charge was made inapplicable to live stock. For some time prior to that date, and ever since, the Railroad has refused to deliver any live stock shipments to Swift & Company's private siding over Stock Yards' track 1619. After an ineffectual exchange of letters between the Railroad and Swift & Company the latter, on September 5, 1941, filed its complaint with the Commission.

We are mindful of the Commission's powers and of the effect to be given its findings in respect of matters within its jurisdiction. In this case we consider only the legality of its order upon the record. The Railroad complains that the Commission's order requires it to do an unlawful act and that it cannot comply with the order because it is without control over the Stock Yards' property and track 1619; that the contract for the use of the track excludes the transportation of shipments of live stock to Swift & Company and that it, the Railroad, is without the means of accomplishing what the Commission orders. The Stock Yards Company asserts that the Commission is without jurisdiction as to it and that even if it has jurisdiction and power to enter a lawful order against it the order made is unlawful in that it appropriates its property without due process of law.

There are various other allegations in the complaints urged by both plaintiffs to support their contentions that the Commission's order legally cannot stand.

We address ourselves to what we conceive to be the principal and fatal flaw in the Commission's order. We assume, without deciding, that under the Elkins Act, 49 U.S.C.A. § 41 et seq., the Commission has jurisdiction over the Stock Yards Company when made a party as in this case and has the power to enter a lawful order affecting the Stock Yards in respect of matters in which the Commission has authority.

Upon the hearing of the petition of Swift & Company seeking to require the Railroad to deliver, and the Stock Yards to permit delivery of, its shipments of live stock to its plant over track 1619, the Commission ordered these two complainants to do so, notwithstanding the fact that track 1619 is owned by the Stock Yards Company and is wholly upon its private property. The only reason for thus subjecting the private property of the Stock Yards Company to the use of Swift & Company appears to be a finding that track 1619 for a number of years has been devoted to public use.

■ We think the finding does not have legal support in the record since it leaves out of consideration the fact that such use has been made from the beginning to the end under the provisions of a written contract expressly asserting ownership and reserving therein the property right of the Stock Yards Company limiting the character of shipments and made mutually terminable upon 30 and 60-day notices, respectively. Certainly, upon these facts and upon the record there has been no such devotion of track 1619 to public use as to amount to a dedication of the Stock Yards' property as a public highway or as a part of the Railroad Company's system over which the latter lawfully may move shipments of freight or live stock to the Swift & Company plant.

Both Swift & Company and the Commission rely heavily upon Morgan, Run Rwy. v. Public Utilities Commission of Ohio, 98 Ohio St. 218, 120 N.E. 295, and Alton R. Co. v. Illinois Commission, 305 U.S. 548; 555, 59 S.Ct. 340, 83 L.Ed. 344. It is our opinion that neither of these cases furnish support for the order. The former we think not pertinent since it arises out of and depends upon the construction of State statutes. Also, in that case there were the following facts which undoubtedly influenced decision: It was conceded that the controlling interest in the railway company and the coal company was owned by substantially the same persons, although in

different proportions, and that the same person was president of both companies. In the latter case the owner of the land over which the shipments were required to be made apparently was not a party, nor did the owner present any objection to the use of the private property. This latter decision also was based upon the effect of a State statute. On page 555 of 305 U.S. Alton R. Co. v. Illinois Commission, supra, the opinion makes it clear that the situation here readily may be distinguished. Contrary to the appellant in that case, the Railroad here is asserting that it would be a trespasser and without right to continue to use the track as required by the order. At the conclusion of the second paragraph on page 555, the Court cites Roberts v. Northern Pacific R. Co., 158 U.S. 1, at page 11, 15 S.Ct. 756, 39 L.Ed. 873; and Northern Pacific R. Co. v. Smith, 171 U.S. 260, at page 271, 18 S.Ct. 794, 43 L.Ed. 157. In these cases the land owner made no effort to assert ownership, nor did the owner make any objection or take any steps to establish private property rights until long after trespass had been accomplished.

Here, the Stock Yards Company never has acquiesced in any use of its land by the Railroad or Swift & Company except by the provisions of the contracts. The entrance upon the land of the Stock Yards Company and the use of its track were not by sufferance but under the terms of a written contract, the provisions of which were well understood by Swift & Company as well as by the Railroad.

Although the Commission holds that track 1619 is now and for some years has been devoted to the public use this is far from concluding that the Stock Yards has lost or surrendered ownership and control of its property when over all that period it has constantly, consistently and notoriously, by written contract, asserted and reserved complete ownership and control over the use of its track. Every person serving, or being served by the use of track 1619 has had full knowledge of that fact. No one has been led to act to his harm by any sufferance or acquiescence, or by any failure upon the part of the Stock Yards Company openly to assert its complete ownership and restrict its use.

■ It was urged in argument before us by counsel for the Commission that such use of the track of the Stock Yards Company has made it a part of the New York Central Railroad system; and that the Railroad cannot refuse to continue to serve Swift & Company or others over that track since the Railroad acted unlawfully in contracting for its use. If the Railroad was out of bounds in entering into a contract with the Stock Yards Company which permitted withdrawal of service to Swift & Company, its wrongful conduct, if such it was, cannot be rectified by penalizing the Stock Yards Company and by taking part of its property. If the Commission lawfully may compel the Railroad Company to use track 1619 as its own or as one which it controls it would, by such order, in effect be declaring an appropriation of property belonging to a private owner, thus undertaking to exercise a power which it does not possess. The order effectually subordinates and subjects the Stock Yards Company's ownership of its property to the beneficial and preferential use of Swift & Company without due process of law.

We think that jurisdiction of the Stock Yards Company, if it does exist under the meaning of the Elkins Act, does not furnish constitutional or legal power in the Commission to order the Stock Yards Company to desist from the practice of asserting or exercising complete ownership of its property. The Commission cannot, as we think, lawfully order the Railroad to do what by law is forbidden by declaring that the Stock Yards Company's track under the circumstances here is a part of the New York Central Railroad system. Such transfer of property lawfully cannot be made short of condemnation and compensation.

The constant, consistent and notorious control reserved by contracts between the Railroad and the Stock Yards Company is sufficient bar to any legal finding that track 1619 had been devoted to the public use in the sense that the Stock Yards Company has surrendered some portion of its title or that the track thereby has become a public highway or common carrier.

To require the service sought by Swift & Company not only would amount to appropriation of the Stock Yards Company's

property for the use of Swift & Company, but would in effect prefer Swift & Company over others who built and own their own connecting switches or sidetracks.

In the view we take of the case, the complainants each are entitled to the relief prayed for.

Treating the proceedings as one upon final hearing, enforcement of the order of the Commission will be permanently enjoined.

Findings and conclusions may be presented for adoption and a decree entered accordingly.