**FEDERAL EXPRESS CORPORATION**

v.

**TENNESSEE PUBLIC SERVICE COMMISSION, et al.**

No. 3–87–0633.

United States District Court, M.D. Tennessee, Nashville Division.

June 16, 1988.

On Motion to Reconsider Aug. 17, 1988.

William R. Willis, Jr., Marian F. Harrison, Willis & Knight, Nashville, Tenn., Jeffrey Rappuhn, for plaintiff.

Donald L. Scholes, Deputy Gen. Counsel, Henry Walker, Tenn., Public Service Com'n, Nashville, Tenn., for defendants.

Val Sanford, Gullett, Sanford, Robinson & Martin, Nashville, Tenn., Peter A. Greene, Thompson, Hine & Flory, Washington, D.C., for Purolator.

**MEMORANDUM**

WISEMAN, Chief Judge.

**I.**

Federal Express Corporation created the small package air express business in which it is an acknowledged world leader, transporting well over 700,000 packages every night.[1]   Virtually every package is

---

**1.** The facts set forth in this opinion are derived    from explanations given by A. Doyle Cloud, Vice

processed through the Federal Express system in the same way: it is picked up by a courier, taken to an airport, flown to one of Federal Express' airport hubs, sorted with other packages bound for the same location, and then transported away from the hub by air or truck to its ultimate destination. During this process, Federal Express tracks only the destination, not the origin, of each package. Packages from every conceivable location are initially taken to one location where they are then sorted by destination only. Approximately 90 percent of all packages transported by Federal Express are sorted at its Superhub in Memphis, Tennessee, the corporation's principal place of business. To make the system both economical and efficient, the same sorting procedure is followed for every package, even when its origin and destination are very near each other. Hence, a package sent by Federal Express from one floor of a Manhattan Skyscraper to another was first flown to Memphis and sorted with all the other packages to be transported that evening. To operate this system, Federal Express employs 56 Boeing 727's, 19 DC–10s, a specialized fleet of feeder aircraft, and a motor vehicle fleet exceeding 16,000 vehicles. Federal Express is a certificated air carrier operating under the grant of an all cargo authority issued by the Federal Aviation Authority under the Federal Aviation Act of 1958. Federal Express is also licensed as a motor carrier under the Interstate Commerce Act as an entity that holds itself out to the general public to provide motor transportation for compensation. *See 49 U.S.C.* § 10102(14).

Of the more than 700,000 packages transported nightly, approximately 1000 have both an origin and destination in Tennessee. Many of these Tennessee parcels are transported in exactly the same way other parcels are distributed: trucks pick up the parcels and take them to nearby aircraft; they are flown to Memphis and sorted; they are flown back to new destina-

tions and ultimately delivered to the recipient by truck. Some Tennessee packages picked up near the Memphis hub, however, with destinations that are also near the hub are never transported by air. A courier picks them up, takes them by truck to the hub for sorting alongside other packages destined for points across the globe, and after sorting, takes them again by truck to their destination. Under Federal Express' current highly structured system, it is impossible for the courier who picks up the packages initially to know which of them will travel by air alone, which by motor vehicle alone, and which by a combination of air and ground transport. Using calculations derived after the fact, Federal Express estimates that it transports approximately 500 packages per night by motor vehicle solely within the state of Tennessee. These packages comprise less than 6 percent of Federal Express' Tennessee volume and less than .01 percent of Federal Express' National Volume.

The Tennessee Motor Carrier Act defines a motor carrier as follows:

> "Motor carrier," when used in this chapter, means any person, firm, partnership, association, joint stock company, corporation, lessee, trustee, or receiver appointed by any court whatsoever, operating any motor vehicle with or without semi-trailers attached, upon any public highway for the transportation of persons or property or both or for providing or furnishing such transportation service, for hire as a common carrier.

Tenn.Code Ann. § 65–15–102(c). A motor carrier cannot operate as a common carrier between two points in Tennessee without first obtaining a certificate of convenience and necessity from the Tennessee Public Service Commission ("TPSC"). Tenn.Code Ann. § 65–15–107. The TPSC has the power under Tennessee law to regulate motor carriers by approving rates, fares, charges, classifications, schedules, services, and modes of operation. Tenn.Code Ann.

President of Legal and Regulatory Affairs at Federal Express, in his testimony at the hearing for a preliminary injunction and in an affidavit. *See* Transcript of Hearing at 30–113, *Federal*

*Express Corp. v. Tennessee Public Service Comm'n.,* (3:87–0633); Complaint, Exhibit G, Affidavit of A. Doyle Cloud.

§ 65–15–106. Federal Express has never obtained a certificate of convenience and necessity from the TPSC.

On July 2, 1986, the TPSC asked Federal Express to show cause why it was not subject to the Tennessee Motor Carriers Act.[2] Federal Express had a hearing before an Administrative Law Judge on July 23 and September 24 in which it argued against the TPSC's regulation of its operations. On February 24, 1987, the ALJ ruled that Federal Express was a motor carrier under Tennessee law and must apply for a certificate from the TPSC. TPSC reviewed the ALJ's order and heard oral argument from all the parties. After a review of the entire record, the TPSC affirmed the ALJ's decision and ordered Federal Express to apply for a certificate. On June 9, 1987, the TPSC issued a twenty-five page Show Cause Order in which it set forth its findings of fact and conclusions of law. At the hearing Federal Express had argued, inter alia,[3] that section 105 of the Airline Deregulation Act of 1978, 49 U.S.C. App. § 1305, expressly preempted any state from regulating the rates, routes, or services of a certificated air carrier like Federal Express and that the Act impliedly preempted state law because it frustrated Congressional intent, interfered with the uniform national system Congress had fostered, and burdened interstate commerce. The TPSC gave Federal Express 30 days to comply with its order, later extending that deadline to August 25, 1987. The Tennessee Motor Carrier Act provides for judicial review of TPSC orders through the Tennessee state courts. Tenn.Code Ann.

§ 65–15–120; § 4–5–322. Alternatively, the TPSC may sue for an injunction in the state's chancery courts to enforce its orders against noncompliant parties. Tenn. Code Ann. § 65–15–121.

Federal Express filed a petition for review and an application for immediate stay with the Tennessee Court of Appeals. The company sought to delay its application for a certificate of convenience and necessity pending review of the TPSC's order. The Tennessee Court of Appeals denied the stay on August 6. On August 7, Federal Express filed a complaint in this Court.

In its complaint, Federal Express sought declaratory and injunctive relief against the TPSC, arguing that the Tennessee Motor Carrier Act was expressly preempted by the Airline Deregulation Act and impliedly preempted by the Commerce Clause.[4] Plaintiff's motion for a temporary restraining order, forestalling application for the certificate, was granted on August 10. On September 11 and 12, this Court heard arguments on the motion for a preliminary injunction. Purolator Courier, a competitor with Federal Express that has complied with the Tennessee Motor Carrier Act, was permitted to intervene as a defendant. The hearing was consolidated with a bench trial on the merits. After the first day of trial in this Court, Federal Express voluntarily dismissed its appeal in state court, apparently hoping to undercut any possibility of abstention. The Court heard the testimony of two Federal Express executives[5] as well as oral argument for two days, granted the preliminary injunction for an indefinite period, and took the decision on the merits

**2.** For a synopsis of the procedural history of this case before it reached this Court, *see* Complaint, Exhibit B, Show Cause Order against Federal Express Corporation.

**3.** Federal Express also made two arguments before the Public Service Commission that were not included in its federal complaint: that postal regulations suspending the private express statutes preempted state regulatory authority over intrastate ground transport by entities like Federal Express that operate under the suspension; and that intrastate surface transport of mail by Federal Express is business conducted for the United States government and exempt

from state regulation under Tenn.Code Ann. § 65–15–105. *See* Complaint, Exhibit B at 5.

**4.** Complaint, *Federal Express Corp. v. Tennessee Public Service Comm'n*, (3:87–633). Federal Express also made its interstate commerce argument a subset of the preemption issue in its trial brief. *See* Trial Brief of Federal Express Corporation at 28–33.

**5.** The Court heard testimony from A. Doyle Cloud and from Frederick Wallace Smith, founder and CEO of the Federal Express Corporation.

under advisement.[6] The Court also requested additional briefs on the issues of abstention and res judicata which were duly submitted. Careful review of the record reveals that the following issues are before the Court.

1. Does this Court have subject-matter jurisdiction over Federal Express' claims?

2. If so, should the Court nonetheless abstain from deciding those claims?

3. Assuming that the Court has the power to decide this case and chooses to exercise that power, what preclusive effect must be given to decisions by a state administrative agency, the TPSC, concerning

    a.  its own jurisdiction;

    b.  its findings of fact; and

    c.  its conclusions of law.

4. If the plaintiff is not barred from this Court on res judicata principles, what are the results on the merits?

    a.  Does the Airline Deregulation Act of 1978, 49 U.S.C.App. § 1305, expressly preempt the Tennessee Motor Carrier Act and therefore prohibit TPSC from regulating Federal Express' intrastate motor carriage?

    b.  Does the Act impliedly preempt operation of the state regulatory scheme because the legislative history urges a uniform national air carrier scheme and because state regulation would unduly burden Federal Express' interstate operations?

Because the Court determines that under *Public Service Commission v. Wycoff Co.*, 344 U.S. 237, 73 S.Ct. 236, 97 L.Ed. 291 (1952) and its progeny the Court has no

---

6. *See* Transcript at 227–228; Clerk's Resume for September 11, 1987.

7. It is axiomatic that the Constitutional requirement in Art. III § 2 that a case "arise under" federal law is broader than the requirement couched in almost identical language in 28 U.S.C. § 1331. The Supreme Court has observed that it makes no such distinction between 28 U.S.C. § 1331 and 28 U.S.C. § 1337, however. *See Franchise Tax Bd. v. Laborers Vacation Trust*, 463 U.S. 1, 8, n. 7, 103 S.Ct. 2841, 2845, n. 7, 77 L.Ed.2d 420, 430 n. 7 (1983).

subject matter jurisdiction, only the first issue need be addressed.

## II.

This is not a diversity case. Federal Express' principal place of business is in Tennessee and the TPSC is a Tennessee state administrative agency. This Court only has subject matter jurisdiction if, as Federal Express acknowledged in its jurisdictional statement, the case presents a federal question.

To determine whether the case arises under federal law, the well-pleaded complaint rule requires the court to examine the plaintiff's complaint, not to anticipate federal defenses. So for example, a federal court has no subject matter jurisdiction over a case in which the plaintiff states a claim under state law and the defendant responds by raising a defense under federal law. *See Franchise Tax Bd. v. Construction Laborers Vacation Trust for Southern California*, 463 U.S. 1, 10–11, 103 S.Ct. 2841, 2846–47, 77 L.Ed.2d 420, 430–31 (1983). According to the Holmes test, set forth in *American Well Works Co. v. Layne & Bowler Co.*, 241 U.S. 257, 260, 36 S.Ct. 585, 60 L.Ed. 987 (1916), in the vast majority of cases, a claim arises under the law that creates the cause of action. *See id.* 463 U.S. at 8–9, 103 S.Ct. at 2845–46.

In its jurisdictional statement, Federal Express seeks a declaratory judgment under 28 U.S.C. § 2201 and asserts federal question jurisdiction under 28 U.S.C. §§ 1331 and 1337.[7] Federal Express' claims are said to arise under both a federal statute and the Constitution. The Airline Deregulation Act of 1978, 49 U.S.C. App. § 1305(a) is entitled "Federal Preemp-

---

Section 1331 reads as follows:

Federal Question. The district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States.

Section 1337(a) reads in relevant part as follows:

Commerce and antitrust regulations. The district courts shall have original jurisdiction of any civil action or proceeding arising under any Act of Congress regulating commerce....

tion." It forbids any state to regulate the rates, routes, or services of a certificated air carrier. This statute in combination with the Supremacy Clause, U.S. Const., art. VI, cl. 2, supports the express preemption prong of Federal Express' case. 49 U.S.C.App. § 1302(b) addresses policies underlying the Airline Deregulation Act, including the encouragement of an expedited all-cargo air service system responsive to the needs of shippers, United States' commerce, and the national defense. This portion of the Act in conjunction with the Commerce Clause, U.S. Const., art. I, § 8, cl. 3 sets forth the implied preemption prong of Federal Express' case. Under the well-pleaded complaint rule and the Holmes test, a cursory review of plaintiff's complaint would appear to satisfy the mandates of 28 U.S.C. §§ 1331 and 1337 that the case "arise under" federal law.

This is not the usual case, however. It is an action for declaratory and injunctive relief. The unusual character of the declaratory judgment action is the lynchpin on which this decision turns.

■ Declaratory judgments are peculiar causes of action for several reasons. When the Federal Declaratory Judgment Act, 28 U.S.C. § 2201, was first passed, Congress was concerned that the Act could unduly expand the subject-matter jurisdiction of the federal courts, since a litigant seeking any declaration of rights and liabilities could point to the Act as creating a claim "arising under" a federal statute. Accordingly, the courts determined that merely seeking a declaratory judgment under the new statute could not alone create subject-matter jurisdiction. The litigant must allege an independent basis for the court's power to act apart from section 2201. *See Franchise Tax*, 463 U.S. at 15–19, 103 S.Ct. at 2849–51; Annotation, *Federal Question Jurisdiction in Declaratory Judgment Suit Challenging State Statute or Regulation on Grounds of Federal Preemption*, 69 A.L.R.Fed. 753, 757 (1984). Another oddity of the action for a declara-

tory judgment is that it often reverses the roles of the parties. A plaintiff in a declaratory judgment action frequently seeks to avoid being sued by having a court issue a preliminary determination of its rights. The declaratory plaintiff would have been a defendant if the previously threatened suit had occurred. *See Franchise Tax* at 16, n. 14, 103 S.Ct. at 2850 n. 14; 69 A.L.R.Fed. at 757. Hence, the rule developed that if but for the availability of a declaratory judgment the declaratory plaintiff's claim would have arisen only as a defense to a cause of action brought by the declaratory defendant under state law, no subject-matter jurisdiction exists. *Skelly Oil Co. v. Phillips Petroleum Co.*, 339 U.S. 667, 70 S.Ct. 876, 94 L.Ed. 1194 (1950).

This rule has frequently been applied when the declaratory plaintiff asserts federal preemption as the basis for the court's subject-matter jurisdiction. At least three circuits, including the Sixth Circuit, have uniformly agreed that there is no federal subject-matter jurisdiction when federal preemption is raised as a defense to a threatened state action. *See Michigan Sav. & Loan League v. Francis*, 683 F.2d 957, 962 (6th Cir.1982).[8]

The rule has its origin in an old Supreme Court case, *Public Service Comm'n v. Wycoff Co.*, 344 U.S. 237, 73 S.Ct. 236, 97 L.Ed. 291 (1952), surprisingly similar in its facts to the case before the Court. Wycoff transported films and newsreels throughout the United States, including transport between points in Utah. The Utah PSC filed suit in state court to prevent Wycoff from continuing its intrastate commerce absent the PSC's regulation. Wycoff sought declaratory and injunctive relief in federal court. Hence, Wycoff was the defendant in the PSC's state court suit and the plaintiff in the declaratory judgment action. Wycoff argued that its intrastate operations were so integral to its interstate carriage that the district court should declare all of the Utah shipments were essentially interstate commerce, beyond the

8. *Accord, Madsen v. Prudential Federal Sav. and Loan Assoc.*, 635 F.2d 797 (10th Cir.1980), *cert. denied,* 451 U.S. 1018, 101 S.Ct. 3007, 69 L.Ed.2d 389 (1981); *First Nat'l Bank of Aberdeen v. Aberdeen Nat'l Bank,* 627 F.2d 843 (8th Cir.1980).

scope of the PSC's regulatory hand. *See id.* at 239, 73 S.Ct. at 238. Wycoff also sought to enjoin PSC from interfering with its in-state transport, arguing that the PSC's attempt to halt the in-state shipments was a burden on interstate commerce. *See id.*

The Supreme Court determined that Wycoff warranted neither an injunction nor a declaratory judgment because no justiciable controversy had yet been presented. Wycoff had not asked the court to determine that the PSC was without power to enter a specific order or take any concrete step; rather, both remedies sought to guard against the possibility that the PSC would attempt to prevent the intrastate shipments. *Id.* at 244, 73 S.Ct. at 240 (emphasis omitted). Wycoff was really using the Declaratory Judgment Act as a means to ward off the PSC's attempts to regulate it. In oft-cited dicta, the Court observed:

> In this case, as in many actions for declaratory judgment, the realistic position of the parties is reversed. The plaintiff is seeking to establish a defense against a cause of action which the declaratory defendant may assert in the Utah courts. Respondent here has sought to ward off possible action of the petitioners by seeking a declaratory judgment to the effect that he will have a good defense when and if that cause of action is asserted. *Where the complaint in an action for declaratory judgment seeks in essence to assert a defense to an impending or threatened state court action, it is the character of the threatened action, and not of the defense, which will determine whether there is federal-question jurisdiction in the District Court.* If the cause of action, which the declaratory defendant threatens to assert, does not itself involve a claim under federal law, it is doubtful if a federal court may entertain an action for a declaratory judgment establishing a defense to that claim. This is dubious *even though the declaratory complaint sets forth a claim of federal right, if that right is in reality in the nature of a defense to a threatened cause of action.* Federal courts will not seize litigations from state courts merely because one, normally a defendant, goes to federal court to begin his federal-law defense before the state court begins the case under state law.

*Id.* at 248, 73 S.Ct. at 242 (citations omitted) (emphasis added). The Court added that it disapproved anticipatory declarations as to state regulatory statutes, even when rendered by state courts. *Id.* at 247, 73 S.Ct. at 242. State administrative bodies have the initial responsibility for making factual findings and issuing orders regarding state regulatory schemes; state courts have "the first and last word" about the meaning of state statutes. *Id.* Given this framework and the ample opportunity for judicial review of administrative decisions by the state courts and the Supreme Court, anticipatory declarations by a federal district court were viewed with even more distaste. *Id.*

The Sixth Circuit has adopted the approach of two other circuits in applying the *Wycoff* analysis to declaratory judgments in which preemption is said to be an independent basis for subject-matter jurisdiction. In *Michigan Sav. & Loan League v. Francis*, 683 F.2d 957 (6th Cir.1982), the issue was whether federally chartered savings and loan associations in Michigan had to conform to the Michigan Mortgage Lending Practices Act or whether the Home Owners Loan Act of 1933, a federal statute, preempted state law. Francis, Commissioner of the Michigan Financial Institutions Bureau, sent written notice to the savings and loans and warned them that they would be fined for failure to comply with the state statutory scheme. The savings and loans filed suit in federal court for a declaratory judgment that they were exempt from the state law and for an injunction preventing the Commissioner from regulating them under the state statutory scheme. The savings and loans argued that the federal act preempted state law and that compliance with both federal and state law would be impermissibly burdensome. *Id.* at 958–959.

The district court dismissed the case for lack of subject-matter jurisdiction, and the Sixth Circuit affirmed, quoting the lower court with approval.

> The actual controversy involved here is the application of a state statute and state regulations to the plaintiff associations. There is no controversy over the applicability of the federal regulations. Federal law arises in this case only as a preemption defense raised by the plaintiffs to the enforcement of the Act, which is the real controversy.

*Id.* at 960 (citation omitted). After a discussion of what it called the *"Wycoff* preemption problem," the Sixth Circuit adopted the rule that there is no federal jurisdiction where federal preemption is raised as a defense to a threatened state action. *Id.* at 962.

Shortly thereafter the Sixth Circuit reaffirmed the rule in *First Fed. Sav. & Loan Assoc. v. Detroit Bond & Mortgage Investment Co.,* 687 F.2d 143 (6th Cir. 1982). The issue in this case was whether federally chartered savings and loans had to comply with a state law making due-on sale clauses unenforceable. Again, the savings and loans sought a declaratory judgment that federal regulations preempted state law. Again the court affirmed the district court's dismissal of the claims for lack of subject-matter jurisdiction. The court observed that a recent Supreme Court decision revealed that the savings and loans were correct in asserting that federal lending laws preempted the state law at issue. But because the jurisdictional issue precluded consideration of the merits, dismissal was nonetheless appropriate. *Id.* at 145.

Another district court in our circuit has addressed the *Wycoff* preemption question as well. In *Michigan United Food and Comm. Wkrs. Unions v. Baerwaldt,* 572 F.Supp. 943 (E.D.Mich.1983), *rev'd,* 767 F.2d 308 (6th Cir.1985), *cert. den.,* 474 U.S. 1059, 106 S.Ct. 801, 88 L.Ed.2d 777 (1986), the plaintiffs were health and welfare benefit trust funds subject to ERISA[9] and insured by the Occidental Life Insurance Company. An amendment to the Michigan Insurance Code required that group disability insurance policies include a certain coverage for substance abuse; ERISA did not require this. Although the state took no action against the trusts or their insurer, the trusts sought declaratory and injunctive relief and argued that ERISA preempted application of the state law. *Id.* at 945. The trusts also argued that the state law was preempted by the National Labor Relations Act ("NLRA") because it interfered with bargaining between unions and their employers.

The district court rejected application of the *Wycoff* preemption doctrine for several reasons. No state action had been threatened to spur the declaratory plaintiffs into federal court. *Id.* at 946. Even if it had, the court observed, the insurance company, not the trusts, would have been the defendant in the state court suit. Hence, this case did not exhibit the kind of role reversal common to *Wycoff* and its progeny. Unlike other cases in which the Home Owners Loan Act had been at issue, ERISA had express language of preemption which the court found to be controlling.[10] Finally ERISA itself provided an independent alternative basis for jurisdiction in setting forth a cause of action for the trusts.[11] The district court found that the Michigan statute was preempted both by ERISA and the NLRA. The Sixth Circuit reversed the trial court on the preemption issues but did not address its *Wycoff* analysis. *See* 767 F.2d 308.

---

**9.** The Employee Retirement Income Security Act of 1974, 29 U.S.C. § 1001, *et seq.*

**10.** *Id.* This part of the analysis is jarring in light of the Sixth Circuit's approach in *First Fed. Savings & Loan Asoc. v. Detroit Bond & Mortgage Investment Co.,* 687 F.2d 143 (6th Cir.1982). In that case, the Sixth Circuit observed that a recent Supreme Court decision approving the declaratory plaintiff's preemption argument was not dispositive because the merits could not be reached before the jurisdictional issue. By making the "express language of preemption" in ERISA a factor in the *Wycoff* analysis, the district court seeks to put the cart before the horse. In any event, the Sixth Circuit reversed the trial court's preemption decisions.

**11.** *See* 29 U.S.C. § 1132(a)(3), (f).

### III.

The case before this Court is startlingly similar to those in which both the Supreme Court and the Sixth Circuit have said no subject-matter jurisdiction should exist.

■ In each instance, a state administrative agency took some action against the declaratory plaintiff and ordered it to comply with a state regulatory scheme. The Utah PSC had already filed suit in state court when the Wycoff Company brought its federal court suit; in *Michigan Sav. & Loan,* Michigan's Commissioner of Financial Institutions had ordered federally chartered savings and loans to comply with state law or face a fine. In our case, the TPSC has ordered Federal Express to apply for a certificate of convenience and necessity. Failure to apply in a timely way could prompt the TPSC to bring an action in chancery court to enforce its order.[12] *See* Tenn.Code Ann. § 65–15–121.

Federal Express could have appealed the TPSC's order to the Tennessee Court of Appeals. Instead, like other declaratory plaintiffs in *Wycoff* preemption cases, Federal Express sought to avoid state regulation of its intrastate ground carriage by changing its role as defendant in the administrative action to that of plaintiff in this Court. The arguments made by Federal Express are like those of other declaratory plaintiffs who have asked for declaratory and injunctive relief against a state agency trying to regulate them. In *Wycoff,* the plaintiff said that its intrastate shipments should be characterized as interstate commerce and that regulation would burden interstate commerce. In *Michigan Sav. and Loan,* the declaratory plaintiff argued that federal law preempted the state statute and that compliance was unduly burdensome. In its complaint and in its arguments before this Court, the plaintiff argued that application of the Tennessee Motor Carrier Act was expressly

preempted by the Airline Deregulation Act and impliedly preempted by the potential burden on interstate commerce posed by the TPSC's regulation.

The character of the threatened action by the TPSC is its attempt to enforce its existing order that Federal Express comply with the Tennessee Motor Carrier's Act by applying for a certificate of convenience and necessity, thus permitting the TPSC to regulate it. The defendants take an inconsistent position on this point, arguing that the threat has already passed because the administrative hearing is over and that no threat exists until particular regulations concerning Federal Express have been issued.[13] These positions are both inconsistent and overly formalistic. The analysis of the Sixth Circuit in *Michigan Sav. and Loan* is more to the point. There is no question about whether the Airline Deregulation Act applies to Federal Express. No one suggests that Federal Express is not a certificated air carrier. The real issue in this case is whether the regulatory scheme set forth in the Tennessee Motor Carrier Act can be applied to Federal Express. If the procedural posture of the parties was reversed and the TPSC sought a declaration of its rights under state law, Federal Express' arguments would arise only as a defense to the state law issue. This is not enough to create subject-matter jurisdiction.

This result is satisfactory for two other reasons. Even assuming that Federal Express' interstate commerce claim was neither an intrinsic part of its preemption argument nor that it arose solely as a defense to a state law claim, there would remain a real question as to whether that single issue would be ripe for the Court to decide. The Supreme Court dismissed Wycoff's claim precisely because the declaratory plaintiff was seeking to avoid the bare possibility that it might be regulated in a

---

**12.** Because the preliminary injunction has been continued until the Court reaches a decision, Federal Express' continuing failure to apply for a certificate is not yet untimely.

**13.** *Compare* Supplemental Brief of the Tennessee Public Service Commission on Abstention

and Res Judicata at 14, n. 21 (the state action has already occurred) *with* Supplemental Brief of Purolator Courier Corp. as to Res Judicata and Abstention Issues at 23–25, Appendix A (burdens on Federal Express are hypothetical).

burdensome way. If a particular regulation imposed by the TPSC does result in a burden on interstate commerce, that question can be resolved when it arises. Further, this result comports with the deference entitled to state administrative decisions and state court review emphasized in *Wycoff*. Essentially, Federal Express is substituting this Court for a carefully devised avenue of appeal through the Tennessee Court of Appeals, the Tennessee Supreme Court, and the U.S. Supreme Court. *Wycoff* makes clear that state courts are bound equally with federal courts by the Federal Constitution and laws. *See* 344 U.S. at 248, 73 S.Ct. at 242. For this Court to encourage the maneuver employed by Federal Express in this case would undercut important principles of federalism.

Accordingly, the case is dismissed for lack of subject-matter jurisdiction. The preliminary injunction is dissolved.

### ON MOTION TO RECONSIDER

#### I.

In its June 16, 1988 Memorandum and Order, this Court held that it has no subject matter jurisdiction over the issues in this lawsuit under the Sixth Circuit's rule in *Michigan Sav. & Loan League v. Francis*, 683 F.2d 957 (6th Cir.1982). The Sixth Circuit in that case analyzed the Supreme Court's discussion in *Public Service Commission v. Wycoff Co.*, 344 U.S. 237, 73 S.Ct. 236, 97 L.Ed. 291 (1952) and explicitly held that there is no federal jurisdiction where federal preemption is raised as a defense to a threatened state action. 683 F.2d at 962. The facts of the case before the Court have been set forth in its June 16 Memorandum[1] and will not be repeated in their entirety here. In an administrative action, the Tennessee Public Service Commission [TPSC] has determined that Federal Express Corporation engages in intrastate motor carriage and is therefore sub-

ject to regulation as a motor carrier under the Tennessee Motor Carriers Act, Tenn. Code Ann. § 65–15–101, *et seq.* Federal Express had unsuccessfully argued to the TPSC that the Airline Deregulation Act of 1978, 49 U.S.C.App. § 1305(a), preempted any form of state regulation. When the Tennessee Court of Appeals denied Federal Express' motion for a stay of the TPSC's order to apply for a certificate of convenience and necessity, Federal Express filed suit in this Court for declaratory and injunctive relief on the grounds of federal preemption. Applying the Sixth Circuit's *Wycoff* analysis, this Court held that the real issue in this case was whether the Tennessee Motor Carrier Act was applicable to Federal Express and that federal preemption arose only as a defense to that issue. Accordingly, the case was dismissed for lack of subject-matter jurisdiction.

Defendants Purolator Carrier and the Tennessee Public Service Commission moved the Court to reconsider its order and to abstain from a decision on the merits. At the hearing on the motion to reconsider, defendants urged that the Court had really abstained from the decision and misnamed the result.[2] Citing a First Circuit case in which an analysis similar to the Sixth Circuit's was questioned, *Colonial Penn Group, Inc. v. Colonial Deposit Co.*, 834 F.2d 229 (1st Cir.1987), and a footnote in a Supreme Court case, *Shaw v. Delta Air Lines*, 463 U.S. 85, 96, n. 14, 103 S.Ct. 2890, 2899, 77 L.Ed.2d 490, 500 (1983), defendants argued that the Sixth Circuit's *Wycoff* analysis was inapplicable because Federal Express sought an injunction in addition to a declaratory judgment. Federal Express cited *Braniff Int'l. Inc. v. Florida Public Service Comm'n.*, 576 F.2d 1100 (5th Cir. 1978), as an analogous case and argued that the threat of irreparable harm to plaintiff mandated federal subject matter jurisdiction. While all the parties agreed that the Court had subject-matter jurisdiction,[3]

---

1. Memorandum of Law, *Federal Express Corp. v. Tennessee Public Service Commission*, No. 3–87–0633 (M.D.Tenn. June 16, 1988).

2. Transcript of Hearing at 18, June 22, 1988.

3. It is well established that parties to a lawsuit cannot create subject-matter jurisdiction by stipulation where it does not otherwise exist. *See* Wright & Miller, 13 Federal Practice and Procedure, § 3522 at 66–68 (1984 & Supp. 1987); *Insurance Corp. of Ireland, Ltd. v. Compagnie*

they also agreed that the law in this area was difficult and unclear. The Court took the motion under advisement.

## II.

A reexamination of *Wycoff,* 344 U.S. 237, 73 S.Ct. 236, 97 L.Ed. 291 (1952), only underscores its factual and legal similarity to this case. Like the TPSC, Utah's Public Service Commission said that a motor carrier was subject to state regulation because it engaged in intrastate commerce. The Commission had already filed suit in state court when Wycoff brought its federal action. Wycoff sought two forms of relief: a declaratory judgment that its intrastate transport was actually interstate commerce such that the Commission was preempted from regulating it; and an injunction restraining the Commission from any interference with Wycoff's business as an impermissible burden on interstate commerce. Wycoff held a certificate of convenience and necessity from the Interstate Commerce Commission and was therefore subject to a scheme of federal regulation.

*Wycoff* is often cited for its dicta about subject matter jurisdiction, but in fact the case was dismissed because it was not ripe. *See* 344 U.S. at 240–246, 73 S.Ct. at 238–42. Wycoff had not yet been regulated by the Commission but was trying to guard against the possibility that it might be regulated in the future. *Id.* at 244, 73 S.Ct. at 240. No threat of irreparable harm had occurred to justify an injunction; similarly, lack of a real controversy reduced the claim for a declaratory judgment to a request for an advisory opinion.

■ The Supreme Court speculated. What if the harm had been immediate, the controversy real, the case ripe? Even then, the Court observed that it could not have heard the merits because subject-matter jurisdiction was lacking. *Id.* at 248–49, 73 S.Ct. at 242–43. Subject-matter jurisdiction precedes ripeness. Subject-matter jurisdiction is the power of a federal court to hear a case properly before it. Without

that power, even the most lively controversy simply cannot be heard in federal court.

■ The *Wycoff* doctrine says that where the complaint in an action for a declaratory judgment seeks in essence to assert a defense to an impending or threatened state court action, it is the character of the threatened action and not of the defense which will determine whether there is federal-question jurisdiction in the District Court. *Id.* at 248, 73 S.Ct. at 242. This is true even if the declaratory complaint sets forth a claim of federal right if that right is in reality a defense to the threatened cause of action. *Id.* In *Wycoff,* the fact that a suit had been filed in state court against the Public Service Commission did not constitute irreparable harm sufficient to justify an injunction; it did, however, correspond to the kind of threatened state court action that urges the state court defendant to seek relief as a declaratory plaintiff in federal court. The same facts that made injunctive and declaratory relief untenable in *Wycoff* also made subject-matter jurisdiction inappropriate. But this does not mean that the reverse is true: that whenever there exists irreparable harm, the federal court therefore has subject-matter jurisdiction over the controversy. Instead, it is necessary to separate the threat for ripeness and injunctive purposes from the threat for jurisdictional purposes. In *Wycoff* the Court explained that even had the case been ripe (had the threat of harm from the Commission's regulations been real), *nonetheless* it probably would not have had subject-matter jurisdiction over the dispute (the threatened state action had in any event spurred the state court defendants to become declaratory plaintiffs). Ripeness does not preclude the jurisdictional inquiry.

*Wycoff* has never been overruled and has been recently cited by the Supreme Court with approval. *See Franchise Tax Bd. v. Construction Laborers Vacation Trust,* 463 U.S. 1, 16, n. 14, 103 S.Ct. 2841, 2849, n. 14, 77 L.Ed.2d 420, 435 (1983). It has

*des Bauxites De Guinee,* 456 U.S. 694, 102 S.Ct. 2099, 2104, 72 L.Ed.2d 492 (1982); *In re Rini,*

been described as an established Supreme Court tenet, *Colonial Penn.*, 834 F.2d at 233 (1st Cir.1987), and has spawned a split in the Circuits.

At least three circuits have held that when the declaratory plaintiff has a ripe controversy and seeks a declaration of federal law that has some meaning apart from a threatened state action, there is subject-matter jurisdiction even though the declaratory claim could also have been a defense to the state law action.[4] Other circuits hold that federal preemption can only be in the nature of a defense to a state court action and provides no independent basis for federal question jurisdiction in a suit for a declaratory judgment.[5] The Sixth Circuit falls into the latter category. Further, our Circuit has also applied the rule in cases in which both declaratory and injunctive relief were sought.

### III.

■ The Sixth Circuit has interpreted *Wycoff* to mean that a regulated party like Federal Express that seeks declaratory and injunctive relief in federal court and argues a state law is preempted by a federal regulatory scheme lacks subject-matter jurisdiction in federal court. In *Michigan Sav. & Loan v. Francis*, 683 F.2d 957 (6th Cir. 1982), federally regulated savings and loans sought a declaratory judgment and an injunction against application to them of a Michigan anti-redlining statute. Like Wycoff and like the plaintiff in this case, the savings & loans argued that a federal statute preempted state law and that compliance with state law would be impermissibly burdensome. Unlike the *Wycoff* Court, the Sixth Circuit did not say the controversy was not ripe for adjudication; instead, the *Wycoff* doctrine was applied to dismiss the case for lack of subject-matter jurisdiction. As this Court discussed at length in its June 16 Memorandum, *Michigan Sav. & Loan* is directly on point: the procedural posture of the parties is identical; the relief sought is the same; and the legal arguments are very similar. This case has never been overruled. It is binding authority on this Court.

In at least three cases following *Michigan Sav. & Loan*, the Sixth Circuit has relied upon its *Wycoff* analysis to dismiss cases for lack of subject-matter jurisdiction. None of those cases are as closely analogous to this case as are *Wycoff* and *Michigan Sav. & Loan*. Yet, in a wide variety of contexts, the Sixth Circuit has applied its *Wycoff* analysis without qualification.

In *First Fed.Sav. & Loan Assoc. v. Detroit Bond & Mortgage Investment Co.*, 687 F.2d 143 (6th Cir.1982), federally regulated savings and loans sought a declaratory judgment that a state law making due-on sale clauses unenforceable was preempt-

---

**4.** *See Town of Springfield v. McCarren*, 549 F.Supp. 1134, 1138–39 (D.Vt.1982), *cert. denied*, 464 U.S. 942, 104 S.Ct. 360, 78 L.Ed.2d 322 (1983), *citing First Federal Sav. & Loan Assoc. v. Greenwald*, 591 F.2d 417, 423 n. 8 (1st Cir.1979); *Braniff Int'l Inc. v. Florida Public Service Comm'n*, 576 F.2d 1100, 1104–06 (5th Cir.1978); *Conference of Federal Sav. & Loan Assoc. v. Stein*, 604 F.2d 1256, 1259 (9th Cir.1979), *aff'd mem.* 445 U.S. 921, 100 S.Ct. 1304, 63 L.Ed.2d 754 (1980). *Stein* was distinguished by the Sixth Circuit in *Michigan Sav. & Loan v. Francis*, 683 F.2d 957, 961–62 (1982), which declined to follow it. Similarly, a district court in our circuit explicitly declined to follow the First Circuit's decision in *Greenwald* and the Ninth Circuit's decision in *Stein*. *See Smart v. First Federal Sav. & Loan Assoc. of Detroit*, 500 F.Supp. 1147, 1159 (E.D.Mich.1980) (rejecting argument that if an actual controversy exists, the court has jurisdiction), *aff'd First Fed. Sav. & Loan Assoc. v. Detroit Bond & Mortgage Invest-*

ment Co., 687 F.2d 143 (6th Cir.1982). *Cf. United Air Lines, Inc. v. Division of Industrial Safety*, 633 F.2d 814 (9th Cir.1980) (Denial of subject-matter jurisdiction in suit for injunction when allegations of federal question jurisdiction were really a defense to enforcement of state law), *cert. den.*, 454 U.S. 944, 102 S.Ct. 485, 70 L.Ed.2d 255 (1981) (J. White, dissenting).

**5.** *See Town of Springfield*, 549 F.Supp. at 1138–39, *citing Exxon Corp. v. Hunt*, 683 F.2d 69 (3d Cir.1982), *cert. denied*, 459 U.S. 1104, 103 S.Ct. 727, 74 L.Ed.2d 952 (1983); *Michigan Sav. & Loan*, 683 F.2d at 961–62; *Lawrence County v. State of South Dakota*, 668 F.2d 27, 30–32 (8th Cir.1982), *questioned in Lawrence County v. Lead–Deadwood School District*, 469 U.S. 256, 105 S.Ct. 695, 83 L.Ed.2d 635 (1985); *cf. Madsen v. Prudential Federal Sav. & Loan Assoc.*, 635 F.2d 797, 803–04 (10th Cir.1980), *cert. den.*, 451 U.S. 1018, 101 S.Ct. 3007, 69 L.Ed.2d 389 (1981).

ed by federal law. Plaintiffs did not seek an injunction. The Sixth Circuit reaffirmed that it lacked subject-matter jurisdiction over the case under the rule in *Michigan Sav. & Loan,* despite the existence of a Supreme Court case that favored the plaintiffs on the merits. Although the existence of federal jurisdiction in these situations is a close question, "the law of this circuit is that there is no federal jurisdiction where federal preemption is raised as a defense to a threatened state action." 687 F.2d at 145.

The *Wycoff* doctrine has been applied in other kinds of cases as well. In *City of Saginaw v. Service Employees Int'l Union,* 720 F.2d 459 (6th Cir.1983), a union appealed a declaratory judgment that the arbitral award rendered to it against the employer was unenforceable because it violated the Comprehensive Employment Training Act [CETA].[6] The union had already sued in state court to enforce its contractual award. On appeal, the Sixth Circuit dismissed for lack of subject-matter jurisdiction. Usually, section 301 of the Labor Management Relations Act, 29 U.S.C. § 185, preempts any cause of action under state law whatsoever, such that dismissal under the *Wycoff* analysis, which looks to the character of the threatened state court action, would be inappropriate. In this case, however, the employer did not fall within the federal definition of an "employer" for purposes of section 301. Since the threatened state court action therefore could arise only under state law, federal law was implicated only as a defense to the union's claim. Citing a then recent Supreme Court case, the Court observed that an action could "arise under" state law and preclude federal question jurisdiction even if the state action involved a federal defense, including the defense of preemption, even if the defense was anticipated in the state court complaint, and even if both parties admitted that the federal defense was the only real issue in the lawsuit. *See* 720 F.2d at 462, n. 5, citing *Franchise Tax,* 463 U.S. at 14, 103 S.Ct. at 2848.

In *Bell & Beckwith v. United States, I.R.S.,* 766 F.2d 910 (6th Cir.1985), the Sixth Circuit applied its *Wycoff* rule to interpleader actions. A brokerage firm filed an action for interpleader when the I.R.S. levied a tax lien on an investment account managed by the firm and when the alleged owner of the account demanded payment as well. A United States Magistrate distributed the account to the I.R.S., and the owner appealed. The Sixth Circuit reversed and remanded with instructions to dismiss the case for lack of subject-matter jurisdiction. In its *Wycoff* analysis, the court scrutinized what the declaratory defendants to the interpleader action could have claimed as plaintiffs in a state court action. *See* 766 F.2d at 915–917. The nature of the threatened action determines whether a federal question is involved. The court observed that application of a *Wycoff* analysis does not always lead to dismissal. In patent cases, for example, the infringer typically brings an action for a declaratory judgment in federal court in anticipation of the patent owner's claim. Examination of the threatened action by the patent owner, however, reveals that this claim also would necessarily arise under federal law. Because the nature of the threatened action by the patent owner would arise under federal law, the fact that the owner happens to have been brought into federal court as a defendant in a declaratory judgment action does not preclude federal question jurisdiction. The infringer is not obtaining access to federal court indirectly when it could not have obtained it directly. In these unusual kinds of cases, *Wycoff* analysis supports, and does not undercut, subject matter jurisdiction. *See* 766 F.2d at 913; *Franchise Tax,* 463 U.S. at 19, n. 19, 103 S.Ct. at 2851 n. 19. This result did not occur in *Bell* however. After concluding that the actions each defendant could have brought against the broker and among themselves would have arisen under state law, the court dismissed the suit for lack of subject-matter jurisdiction.

---

**6.** Comprehensive Employment Training Act, 29 U.S.C. §§ 801, *et seq.*

District courts in this circuit have also applied the Sixth Circuit's *Wycoff* analysis. In *ANR Pipeline v. Conoco, Inc.*, 646 F.Supp. 439 (W.D.Mich.1986), a natural gas distributor had sought a declaratory judgment in state court that its performance of offshore contracts should be excused. Conoco, the defendant producer, sought removal to federal court, arguing that all offshore contracts were governed by federal law.[7] The district court observed that ANR went to state court to get an anticipatory defense to any claim Conoco might bring for breach of contract. 646 F.Supp. 447–48. But ANR had not engaged in artful pleading, disguising what was really a defense to a federal claim in state law rubric. Any claim Conoco could have brought for breach—i.e., the threatened action—would have arisen under state and not federal law. Hence, removal was inappropriate.

In another case from the Eastern District of Michigan, the court applied a *Wycoff* analysis and concluded that subject-matter jurisdiction over plaintiff's claim existed. *Michigan United Food & Comm. Wkrs. Union v. Baerwaldt*, 572 F.Supp. 943 (E.D.Mich.1983), *rev'd on other grounds*, 767 F.2d 308 (6th Cir.1985), *cert. den.*, 474 U.S. 1059, 106 S.Ct. 801, 88 L.Ed.2d 777 (1986), has been discussed in detail in the Court's June 16 Memorandum and will only be briefly addressed here. In this case, an employee benefit trust sought both a declaratory judgment and an injunction against the state's insurance commissioner when a recently enacted state law was in apparent conflict with ERISA.[8] The regulated party sought both kinds of relief against a state regulatory entity and argued federal preemption as the basis for

the court's subject-matter jurisdiction. The district court did not disregard *Wycoff* but applied its rule to conclude that subject-matter jurisdiction existed. Because the district court's jurisdictional finding was based on four separate rationales [9] and because the Sixth Circuit declined to comment on any of them, it is impossible for this Court to discern which of these reasons the Court of Appeals approved.

The history of *Wycoff* applications in our circuit since the *Michigan Sav. & Loan* decision has been traced to show how deeply entrenched this analysis has become. Both *Wycoff* and *Michigan Sav. & Loan* are directly on point; *Wycoff's* facts are virtually identical to those in this case. Neither case has been overruled: to the contrary, both have engendered their own body of caselaw. The later Sixth Circuit cases can be distinguished from our facts because the plaintiffs did not seek an injunction, as in *First Federal*, or because they are not actions against state regulatory agencies, like *ANR Pipeline*.[10] In the subsequent district court case that contains both of these elements, it is clear that the Sixth Circuit believed subject-matter jurisdiction existed but unclear why it believed this. Since the 1982 decision in *Michigan Sav. & Loan*, this Circuit as well as district courts within it have continued to rely upon *Wycoff* and even to apply it to very different kinds of cases, such as *Bell*. Hence, this Court is bound by the reasoning in both *Wycoff* and *Michigan Sav. & Loan*, both of which are still good law in this Circuit.

## IV.

Interestingly, the parties in this case have not cited to additional Sixth Circuit

---

7. The Outer Continental Shelf Lands Act ["OCSLA"], 43 U.S.C. § 1331 *et seq.*

8. The Employee Retirement Income Security Act of 1974, 29 U.S.C. § 1001, *et seq.*

9. Grounds relied upon by the Michigan district court included the following: there had been no state agency action against which the trust sought to create an anticipatory defense; if the agency had so acted, the trust would not have been the defendant in that action; ERISA is unique both because of its express preemptive

language and because it provides a separate cause of action (and basis for jurisdiction); and unlike Wycoff's case, this dispute was ripe. *See Michigan United Food and Comm. Wkrs. Unions v. Baerwaldt*, 572 F.Supp. 943 (E.D.Mich.1983), *rev'd on other grounds*, 767 F.2d 308 (6th Cir. 1985), *cert. den.*, 474 U.S. 1059, 106 S.Ct. 801, 88 L.Ed.2d 777 (1986).

10. In fact, these cases were omitted from the Court's original Memorandum precisely because of such dissimilarities.

authority to support their position that the Court has subject-matter jurisdiction over their dispute.[11] Instead, they turn to cases from other Circuits and urge the Court to adopt the rules therein. Plaintiff relies on *Braniff Int'l Inc. v. Florida Public Service Comm'n*, 576 F.2d 1100 (5th Cir.1978), and defendants cite *Colonial Penn Group Inc. v. Colonial Deposit Co.*, 834 F.2d 229 (1st Cir.1987).

*Braniff* is a Fifth Circuit case decided four years before the Sixth Circuit's decision in *Michigan Sav. & Loan*. It bears a factual similarity to this case. In *Braniff*, six airlines sought a declaratory judgment and an injunction against the Florida Public Service Commission, which had issued a show cause order requiring the airlines to comply with state law. A Florida statute gave the Commission the power to disapprove changes in rates, fares, or schedules within the state; the Commission's rule required air carriers to file notice of their intrastate changes in rates, fares, and schedules.[12] The airlines argued, inter alia,[13] that the state regulation was preempted under federal law and that it was an undue burden on interstate commerce. 576 F.2d at 1102. After the district court dismissed the case under *Wycoff*, the Fifth Circuit reversed.

The Court of Appeals asked the extent to which *Wycoff* restricted a federal court from hearing a constitutional challenge to a state statute. Essentially, *Wycoff* was distinguished on two grounds. According to *Braniff*, Wycoff had never challenged the constitutionality of a state statute or administrative ruling, as the airlines had. *Id.* at 1103. Further, the state entity had not

acted in *Wycoff*, according to the Court, whereas in *Braniff* the state had issued a show cause order. The threat of irreparable harm, which was lacking in *Wycoff*, confirmed that the case was ripe for decision.[14] The airlines were not merely seeking to ward off possible action by the PSC at some future date: the regulation had been enacted and the show cause order issued. *Id.* at 1105. Hence, subject-matter jurisdiction was present. The Court held that when a party seeks injunctive and declaratory relief based upon the unconstitutionality of a state statute and where there are no other impediments to federal question jurisdiction, the fact that the constitutional claim might be raised as a defense before the state administrative entity does not deprive the court of jurisdiction. 576 F.2d at 1106.

Despite the similarities between *Braniff* and the facts of this case, important differences remain. First, the preemption arguments are critically dissimilar. In *Braniff*, the airlines argued that the state statute and administrative rules specifically enacted to regulate the rates, fares, and schedules of air carriers were unconstitutional in their entirety and from their inception. Hence, no order issued from the state agency to the airlines to enforce those rules was considered proper. By contrast, Federal Express is much more like Wycoff company, that wanted to prevent the Commission's regulation before it had begun. Federal Express does not argue that the Tennessee Motor Carrier Act regulating intrastate ground carriage is unconstitutional ab initio but that its application to an air

---

**11.** Defendants say that both *First Federal* and *Michigan Sav. & Loan* were solely suits for declaratory judgments, although the latter case from which the Sixth Circuit rule is derived was an action for both declaratory and injunctive relief. *See* Defendant's Memorandum of Law in Support of Defendant's Motion to Reconsider at 2. Plaintiff distinguishes the Sixth Circuit line of cases in a sentence, stating that no indication of irreparable injury was present in them. *See* Response to Defendants' Motion for Reconsideration at 608–609.

**12.** *See* Fla.Stat. § 330.53 (1973); Fla.Admin. Code, Rule 25.15–50.

**13.** In addition to their preemption and interstate commerce arguments, the airlines also argued that the state attempts to regulate them violated the Due Process and Equal Protection clauses of the Fourteenth Amendment. *Braniff*, 576 F.2d at 1102.

**14.** Note that the Fifth Circuit determined only that the case was ripe and subject-matter jurisdiction existed—it did not reach the issue of whether an injunction was appropriate, but only observed that it was not foreclosed. *See* 576 F.2d at 1105. In fact, the district court had denied the request for a stay or a preliminary injunction. *See id.* at 1102, n. 4.

carrier is.[15] It does not claim that no cause of action may ever be brought under the Act but that it cannot be enforced against Federal Express.[16] The only requirement imposed by the TPSC's order as it now stands is that Federal Express apply for a Certificate of Convenience and Necessity, submitting to regulations TPSC could issue in the future. It is a kind of preamble to the regulatory scheme already in place in *Braniff.* Like the Utah Public Service Commission in *Wycoff,* the TPSC has not yet issued a single regulation concerning integrated carriers. The declaratory plaintiff is seeking to ward off the possibility that it might be unconstitutionally regulated in the future, not to challenge a constitutionally deficient law already in place. Echoing the *Wycoff* court, even if Federal Express is engaged solely in interstate commerce, the Court cannot say that there is nothing whatever that the State may require. *Wycoff,* 344 U.S. at 245, 73 S.Ct. at 241 (1952). When the request is not for ultimate determination of rights but for preliminary findings and conclusions intended to fortify the litigant against future regulation, it would be a rare case indeed in which the relief should be granted. *Id.* at 246, 73 S.Ct. at 241.

Further, the Fifth Circuit's analysis of the state agency's action in *Wycoff* seems somewhat misplaced. The Utah Commission *had* taken action against the regulated party by bringing suit in state court. Similarly, in this case the TPSC has conducted a hearing that required Federal Express to show cause why the Tennessee Motor Carrier Act should not apply to it. In *Wycoff,* the Supreme Court said that the state court action on these particular facts [17] was not enough to create the kind of irreparable harm to justify an injunction,

but it was precisely enough to spur Wycoff into federal court as a declaratory plaintiff. *Id.* at 245, 248, 73 S.Ct. at 241–43. Thus, the inquiry into the state's action or the threatened harm has separate aspects, injunctive and jurisdictional. The Court underscores this by explaining that even if the case had been ripe, subject-matter jurisdiction would have been questionable.

> Since this case should be dismissed in any event, it is not necessary to determine whether, on this record, the alleged controversy over an action that may be begun in state court would be maintainable under the head of federal-question jurisdiction. But we advert to doubts upon that subject to indicate the injury that would be necessary if this case ... rested merely on [a] threatened suit in state court.... [T]his suit cannot be entertained as one for injunction and should not be continued as one for a declaratory judgment.

*Id.* at 248–249, 73 S.Ct. at 242–43. Hence, the fact that Federal Express obtained a preliminary injunction which has now been dissolved does not confer subject-matter jurisdiction on the parties. These are two separate inquiries. The issue of jurisdiction precedes the issue of the harm to Federal Express. This Court cannot reach the merits of the controversy unless it has the power to do so, assuming the dispute is ripe for adjudication.

The Fifth Circuit in *Braniff* admits that its real concern is that a plaintiff not be allowed, by asserting a defense to impending or threatened state action, to proceed under the fountainhead of federal-question jurisdiction in a case which could not *otherwise* be heard in federal court. *Braniff,* 576 F.2d at 1105, emphasis added. The court was apparently reformulating the

---

**15.** Essentially, Wycoff also claimed that a state regulatory scheme not yet in existence was preempted by the Supremacy Clause. The Fifth Circuit's assertion that this was not a constitutional challenge reads out the entire basis for Wycoff's suit.

**16.** *Cf. Franchise Tax Bd. v. Construction Laborers Vacation Trust,* 463 U.S. 1, 26, 103 S.Ct. 2841, 2855, 77 L.Ed.2d 420, 441 (1983) (Though ERISA could preclude enforcement of the State's tax levy in this case, the cause of action

to enforce the levy under state law was not itself preempted by ERISA).

**17.** In its complaint, Wycoff had sought both an injunction and a declaratory judgment but had apparently abandoned the former claim on appeal. Nonetheless, the Court explained why an injunction would have been inappropriate. *See Public Service Comm'n of Utah v. Wycoff Co.,* 344 U.S. 237, 73 S.Ct. 236, 97 L.Ed. 291 (1952).

*Skelley* doctrine: if but for the availability of a declaratory judgment the declaratory plaintiff's claim would have arisen only as a defense to a cause of action brought by the declaratory defendant under state law, no subject-matter jurisdiction exists. *Skelley Oil Co. v. Phillips Petroleum Co.*, 339 U.S. 667, 70 S.Ct. 876, 94 L.Ed. 1194 (1950). In this case, the state court action anticipated by the complaint is that the TPSC will attempt to enforce its show cause order against Federal Express under Tenn.Code Ann. § 65–15–121. Preemption is an issue that Federal Express would raise as a defense to the operation of the Tennessee Motor Carriers Act. Such a case could not be removed to this court because federal law would arise only as a defense. *See Franchise Tax*, 463 U.S. 1, 103 S.Ct. 2841, 77 L.Ed.2d 420. *See also, ANR Pipeline*, 646 F.Supp. 439. If the lawsuit could not have come to federal court through the front door of removal, it also cannot come to federal court through the back door of the Federal Declaratory Judgment Act.

Despite *Braniff's* facial similarity to this case, it is not persuasive authority The basis for preemption in both cases is different. *Braniff's* analysis of *Wycoff* is problematic. Most importantly, *Braniff* adopts a view of *Wycoff* that is counter to that adopted in more recent case law in this circuit. Accordingly, *Braniff* is not controlling in this case.

At the hearing on the motion to reconsider, defendants cited *Colonial Penn Group Inc. v. Colonial Deposit Co.*, 834 F.2d 229 (1st Cir.1987), as a case in which a Circuit Court had reevaluated its *Wycoff* analysis. The facts are dissimilar to those before the Court,[18] and the First Circuit affirmed the district court's dismissal of the lawsuit for lack of subject-matter jurisdiction. *Id.* After tracing the history of *Wycoff* the court distinguished cases in which the plaintiff challenges a state regulatory scheme applicable to it and the defendant is a state official. *Id.* at 236–238. Concurrent jurisdiction was said to be available to the plaintiff to determine whether a federal statute preempted the state regulation. Because the facts in *Colonial Penn* did not fall within that definition, the court observed that what it called the exception to the *Wycoff* rule did not apply. *Id.* at 236–238.

Because the *Colonial Penn* court did not have similar facts before it, the First Circuit did not have to reach the issue of how to decide a case like this one, although the Court's dicta indicates it would acknowledge subject-matter jurisdiction. More importantly, the difficulty with carving out this exception to *Wycoff* is that the exception restates *Wycoff's* facts but reaches an opposite result. Wycoff too was a plaintiff subject to an extensive scheme of federal regulation. Wycoff too sought to avoid state agency regulation. Wycoff sought a declaration that its business was interstate in character and an injunction forbidding interference. The facts in *Michigan Sav. & Loan* may be characterized in the very same way. When the *Wycoff* Court expressed doubt about its subject-matter jurisdiction in just such a case, when the Sixth Circuit developed a rule upholding dismissal in an analogous case, and when neither case has ever been overturned, this Court must be bound by their teachings.

It is no secret that the Circuits are split in their applications of the *Wycoff* dicta.[19] But resolution of these conflicts is not a matter to be addressed by this district court.

---

**18.** *Colonial Penn* was not an action in which a regulated entity sought relief from a regulating agency on preemption grounds. In state court, a local bank sued Colonial Penn and its subsidiaries for a declaratory judgment and an injunction alleging unfair competition and trademark infringement under state common law. The declaratory defendants in state court filed suit in federal court, arguing that they were entitled to declaratory and injunctive relief under the Lanham Act, 15 U.S.C. § 1121. The court concluded that because the second action was only a defense to the original state law action, jurisdiction was lacking. 834 F.2d at 236. This was true even though the Lanham Act issues might be the central feature of the case. *Id.*

**19.** *See supra* notes 3–4. *See also,* Annotation, *Federal Question Jurisdiction in Declaratory Judgment Suit Challenging State Statute or Regulation on Grounds of Federal Preemption*, 69 A.L.R. Fed. 753 (1984 & 1986 Suppl.).

## V.

The most serious challenge to this Circuit's *Wycoff* rule are footnotes in a series of Supreme Court opinions following *Wycoff*. These footnotes are problematic because they cite *Wycoff* with approval but suggest a gloss on the case that appears to contradict *Wycoff* itself. Further, the footnotes are dicta that are not controlling in the cases in which they appear.

In *Franchise Tax Board v. Construction Laborers Vacation Trust*, 463 U.S. 1, 103 S.Ct. 2841, 77 L.Ed.2d 420 (1983), a state statute [20] required an employee's vacation trust to pay withholding taxes to the state. When the trust refused to pay, the tax board sued in state court to collect the taxes under state law. The trust, arguing that application of state law was preempted by ERISA, sought to remove the lawsuit to federal court. In a unanimous opinion, the Supreme Court held that a federal district court had no subject-matter jurisdiction to hear such a case.

After a thorough discussion of the Holmes test and the well-pleaded complaint rule,[21] the Court explained that application of the rule may seem awkward when neither the obligations of state law nor defendant's failure to comply are disputed, and the parties admit that the only real question for resolution is the defense of preemption. *See* 463 U.S. at 12, 103 S.Ct. at 2848. Yet, subject-matter jurisdiction was not present when preemption arose as a defense to obligations that were created by state law without reference to federal law. *Id.*[22] This meant that the tax board's first cause of action under the California Tax Code arose under state law and could not be removed. Not only did this characterization of the claim meet the Holmes test, it conformed to common sense as well.

> California law establishes a set of conditions, without reference to federal law, under which a tax levy may be enforced; federal law becomes relevant only by way of a defense to an obligation created entirely by state law, and then only if appellant has made out a valid claim for relief under state law. The well-pleaded complaint rule was framed to deal with precisely such a situation.

*Id.* at 13, 103 S.Ct. at 2848. (citation omitted). The tax board's second cause of action was more difficult to characterize. Preemption was a necessary ingredient to the tax board's claims under the California Declaratory Judgment Act. The Court applied the *Skelley* rule [23] to state declaratory judgments and asked if but for the availability of the declaratory judgment the federal claim would have arisen solely as a defense to a state-created action. *Id.* at 18, 103 S.Ct. at 2850. Hence, the Court examined what would have happened if the trust rather than the tax board had originally brought the lawsuit.

Had the trust initially sued in state court, the Court observed, removal might have been appropriate because ERISA gives it an express cause of action. Alternately, the trust *"might* have been able to obtain federal jurisdiction under the doctrine applied *in some cases* that a person subject to a scheme of federal regulation may sue in federal court to enjoin application ... of conflicting state regula-

---

**20.** Cal.Rev. & Tax Code Ann. §§ 18817–18 (West Supp.1983).

**21.** The Holmes test says that a claim usually arises under the law that creates the cause of action. *See American Well Works Co. v. Layne & Bowler Co.,* 241 U.S. 257, 260, 36 S.Ct. 585, 60 L.Ed. 987 (1916). Under the well-pleaded complaint rule, examination of the complaint alone and not the defense determines whether a claim arises under federal law. *See Franchise Tax,* 463 U.S. at 10–11, 103 S.Ct. at 2846–47. Not every federal issue creates a federal question.

**22.** The Court further explained that "by unimpeachable authority, a suit brought upon a state statute does not arise under an act of Congress or the Constitution ... because prohibited thereby." *Franchise Tax,* 463 U.S. at 12, 103 S.Ct. at 2848. This does not mean that no federal court will ever hear the federal preemption defense, however, because the state court's decision may be subject to Supreme Court review. *Id; cf. Wycoff,* 344 U.S. at 247–48, 73 S.Ct. at 242–43 (ultimate recourse may be had to the Supreme Court if a state court has denied a federal right).

**23.** *See Skelley Oil Co. v. Phillips Petroleum Co.,* 339 U.S. 667, 70 S.Ct. 876, 94 L.Ed. 1194 (1950).

tions...." *Id.* at 20, n. 20, 103 S.Ct. at 2851 n. 20 (emphasis added). The trust's cause of action would have arisen under federal law because it sought to enforce a federal right. By contrast, the State had no federal right for which protection had been sought. Ready access to its own enforcement machinery meant it had no need for access to a federal forum. *Id.* at 20–22, 103 S.Ct. at 2851–53. Therefore, while the trust might have brought the lawsuit under the second claim in federal court, the state could not. Accordingly, removal was inappropriate. *Id.* In *Franchise Tax*, the Court twice cited its *Wycoff* decision with approval. *See id.* at 16, n. 14, 103 S.Ct. at 2850 n. 14 and at 19, n. 19, 103 S.Ct. at 2851 n. 19.

The case before this Court is similar to *Franchise Tax* in that it involves a prior administrative action to enforce a state statute from which the regulated party claims an exemption under federal law. It is distinct in the procedural posture of the parties. As in *Wycoff* and *Franchise Tax*, the Court has considered what kind of action the declaratory defendant could bring. In this case, the TPSC could sue to enforce its order under Tenn.Code Ann. § 65–15–121. Federal Express would raise the issue of federal preemption as a defense. Unlike ERISA, the Airline Deregulation Act would give Federal Express no cause of action for enforcement of its provisions. Federal Express argues not that federal law preempts a cause of action under state law (so that, as in patent cases, the case would arise under federal law no matter who brought it) but that it preempts application to it of an otherwise valid state law.[24] The tentative language of footnote 20 in *Franchise Tax*, which the Court did not rely upon as controlling, is unpersuasive in light of the direct language on point in *Wycoff* and *Michigan Sav. & Loan.* Federal Express seeks to assert no federal

cause of action but in essence claims a federal defense to operation of a state statute that, like the California Tax Code, established a set of conditions without reference to federal law. Hence, *Franchise Tax* supports the result of this Court's June 16 memorandum.

Language that echoes the Supreme Court in *Franchise Tax* may also be found in two later footnotes. *Shaw v. Delta Air Lines*, 463 U.S. 85, 103 S.Ct. 2890, 77 L.Ed. 2d 490 (1983) determined that a portion of New York state law[25] concerning pregnancy benefits was preempted by ERISA. In footnote 14, the Court said that when a regulated party seeks injunctive relief from state regulation on the ground that the regulation is preempted by federal law, a federal question is presented. 463 U.S. at 96, 103 S.Ct. at 2899. *Shaw* does not discuss *Wycoff.* Similar language appears in *Lawrence County v. Lead–Deadwood School District No. 40–1*, 469 U.S. 256, 105 S.Ct. 695, 83 L.Ed.2d 635 (1985), in which a South Dakota county refused to distribute the federal revenues it received as compensation for its tax immune properties according to a state statutory scheme.[26] The case came to the Supreme Court through a state court action in which the county argued that the federal Payment in Lieu of Taxes Act, 31 U.S.C. § 6901 *et seq.*, preempted state law. The county had attempted to bring an action in federal court and been dismissed on appeal for lack of subject-matter jurisdiction. *Lawrence County v. State of South Dakota*, 668 F.2d 27 (8th Cir.1982). In a footnote, the Court said the Eighth Circuit's ruling was erroneous because the county had also sought an injunction under the Supremacy Clause. *See* 469 U.S. 259, n. 6, 105 S.Ct. 697 n. 6.

■ The statements in these cases are undeniably troublesome because they imply that the approach adopted in *Michigan*

---

**24.** If a federal *cause of action* completely preempts a state cause of action, any complaint that comes within the scope of the federal cause of action necessarily arises under federal law. *Franchise Tax*, 463 U.S. at 24, 103 S.Ct. at 2854 (emphasis added).

**25.** The Human Rights Law, NY Exec. Law §§ 290–301 (McKinney 1982 and Supp. 1982–1983) was held to be partially preempted by federal law; the Disability Benefits Law, NY Work Comp. Law §§ 200–242 (McKinney 1965 and Supp. 1982–1983) was not preempted.

**26.** S.D.Codified Laws § 5–11–6 (1980).

*Sav. & Loan* may be erroneous. But they are even more confusing in light of *Wycoff*, who just like this plaintiff was a regulated party seeking declaratory and injunctive relief to guard against the possibility of adverse state regulation. As stated in this Court's June 16 Memorandum, the question of ripeness and the policy of deference to state administrative agencies also support dismissal.

Both *Wycoff* and *Michigan Sav. & Loan* are analogous factually and legally to the case before the Court. Neither case has been overruled. Later cases in our circuit, while not analytically as close as these cases, nonetheless rely extensively on a *Wycoff* analysis. The Supreme Court's language in later cases, although strongly put, is not controlling in the cases in which it appears. It is unclear how this language fits in with *Wycoff*, which is still approved by the Supreme Court. When neither of the cases that are unquestionably binding on this Court have been overruled or modified, this Court is loathe to ignore them absent further guidance.

Accordingly, the motion to reconsider is denied.